Dated: May 25, 2007

      New York, New York

                                            GABRIEL W. GORENSTEIN
                                            United States Magistrate Judge

Copies sent to:

George Lunney
94-A-3321
Elmira Correctional Facility
PO Box 500
Elmira, NY14902-0500

Benjamin Lee
Assistant Attorney General
120 Broadway
New York, NY 10271

Hon. Lewis A. Kaplan
United States District Judge

56

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GEORGE LUNNEY,                                                :

                 Plaintiff,                :        04 Civ. 2438 (LAK) (GWG)

    -v.-                                                    :        **REPORT AND**
                                                **RECOMMENDATION**
LIEUTENANT BRURETON, et al.,                                  :

                 Defendants.               :
--------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**


APPEARANCES:

George Lunney
94-A-3321
Elmira Correctional Facility
PO Box 500
Elmira, NY 14902-0500
Plaintiff Pro Se

Benjamin Lee
Assistant Attorney General
120 Broadway
New York, NY 10271
Attorney for Defendants

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   A. Standard of Review on Summary Judgment Motions . . . . . . . . . . . . . . . . . . . . 8
   B. Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      1. PLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      2. New York's Inmate Grievance Program . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   A. Eighth Amendment Claim Relating to Food in the SHU . . . . . . . . . . . . . . . . . 12
   B. Eighth Amendment Claim of Excessive Force . . . . . . . . . . . . . . . . . . . . . . . . 16
      1. Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      2. Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
   C. Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene
      Items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
      1. Laundry Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      2. Plumbing Problems and Failure to Provide Personal Hygiene Items . . . . . . . 28
      3. Personal Involvement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   D. First Amendment Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
      1. Law Governing First Amendment Retaliation . . . . . . . . . . . . . . . . . . . . . 31
      2. Claims against Fischer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
      3. Claims against Blot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         a. Exhaustion of Claims Against Blot . . . . . . . . . . . . . . . . . . . . . . . . . 34
         b. The Merits of Lunney's Allegation that Blot Denied Him Showers,
            Meals, and Recreation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
            i. Adverse Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
            ii. Causal Connection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
         c. The Merits of Lunney's Allegation that Blot Filed a False Misbehavior
            Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
         d. The Merits of Lunney's Allegation that Blot Threatened Physical
            Violence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
         e. The Merits of Lunney's Allegation of Retaliatory Assault . . . . . . . . 45
      4. First Amendment Claim Against Frazier . . . . . . . . . . . . . . . . . . . . . . . . . 47
      5. First Amendment Claim Against Brereton . . . . . . . . . . . . . . . . . . . . . . . . 47
   E. Unfiled Grievances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
   F. Fourteenth Amendment Due Process Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 50
      1. Law Governing Disciplinary Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 50
      2. Written Disposition of Disciplinary Hearing . . . . . . . . . . . . . . . . . . . . . . 51

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEORGE LUNNEY,                                              :

                 Plaintiff,                       :        04 Civ. 2438 (LAK) (GWG)

      -v.-                                         :        **REPORT AND**
                                              **RECOMMENDATION**
LIEUTENANT BRURETON, et al.,                               :

             Defendants.                      :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      George Lunney, currently an inmate at the Elmira Correctional Facility, has brought this

suit pro se under 42 U.S.C. § 1983 against employees of the Sing Sing Correctional Facility

("Sing Sing"), where Lunney was previously housed.  Lunney alleges that certain defendants

violated his due process rights by improperly conducting a disciplinary hearing that resulted in

his confinement in the Special Housing Unit ("SHU") of Sing Sing.  He further alleges that

various defendants were deliberately indifferent to inhumane conditions of confinement in the

SHU in violation of his Eighth Amendment rights, that he was the victim of an assault, and that

he was retaliated against for filing grievances with respect to conditions in the SHU in violation

of his rights under the First Amendment.

      Defendants now move for summary judgment.  As described below, the defendants'

motion should be granted, with the exception of the portion of their motion concerning Lunney's

claim of (1) excessive force against Correction Officers Blot and Frazier and (2) his First

Amendment retaliation claims (a) against defendant Officer Blot based on the allegedly

retaliatory assault, threats, and deprivation of recreation and showers and (b) against Officer

Frazier for his participation in the retaliatory assault.

I. <u>BACKGROUND</u>

The facts described below and later in this Report are drawn largely from Lunney's affidavit.  <u>See</u> Plaintiff's Affidavit, filed June 13, 2006 (Docket #88) ("Lunney Aff.").  In many places, Lunney's affidavit cites to allegations contained in his amended complaint.  <u>See</u> Amended Complaint, filed Mar. 24, 2005 (Docket #34) ("Am. Compl.").  That is, the affidavit cites the allegations of the amended complaint without repeating the substance of the incorporated matters under oath or penalty of perjury.  Because defendants have not objected to this approach, we proceed as if any such incorporated matters in the Amended Complaint were admissible under Fed. R. Civ. P. 56(e).

A. <u>Facts</u>

On May 21, 2002, Lunney returned to his cell following a "medical shower" to find Correction Officer Hadzovic leaving the cell.  <u>See</u> Lunney Aff. ¶ 1 (incorporating Am. Compl. at 3 ¶ 1).  Hadzovic informed Lunney that he had just searched his cell.  <u>Id.</u>  After conducting a pat frisk on Lunney, Hadzovic reentered the cell and came out with a box of spaghetti.  <u>Id.</u>  Hadzovic announced that he would confiscate the box, which appeared to be altered, and locked Lunney in his cell.  <u>Id.</u>

Approximately 45 minutes after Hadzovic left, Correction Sergeant Guadagno came to Lunney's cell with two other correction officers.  <u>Id.</u> (incorporating Am. Compl. ¶ 2).  Guadagno informed Lunney that a "shank type weapon" was discovered in the confiscated spaghetti box.  <u>Id.</u>  Lunney asserted that the weapon was not his and that he had merely purchased the spaghetti from the commissary.  <u>Id.</u>  Nonetheless, he was escorted to the SHU to await disciplinary action.  <u>Id.</u>

2

Lunney received a "Tier III" misbehavior report on May 22, 2002.  Id. (incorporating Am. Compl. ¶ 3); Inmate Misbehavior Report (reproduced as Ex. A to Notice of Motion to Dismiss, filed June 10, 2004 (Docket #15) ("Motion to Dismiss")).  Following a disciplinary hearing on June 13, 2002, Lunney was found guilty of possession of a weapon and sentenced to nine months' confinement in the SHU.  Lunney Aff. ¶ 2 (incorporating Am. Compl. ¶ 4).  Lunney filed an administrative appeal with Donald Selsky, the Director of Special Housing/Inmate Disciplinary Program for the New York State Department of Correctional Services, who affirmed the disposition on August 22, 2002.  Lunney Aff. ¶ 2; Am. Compl. at 2.

Lunney then filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court, Albany County.  Lunney Aff. ¶ 2.  On September 16, 2002, Justice Thomas J. McNamara issued an order to show cause directing Selsky to respond to the petition.  Id. ¶ 4.  On October 3, 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense.  Id. ¶ 5.  Lunney subsequently withdrew his Article 78 petition.  Id. ¶ 9.

The rehearing commenced on October 15, 2002.  Id. ¶ 11; Disciplinary Hearing Transcript (reproduced as Ex. B to Motion to Dismiss) ("Transcript").  During the hearing, a dispute arose between the hearing officer, Lieutenant Brereton,[1] and Lunney.  Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 29-37.  Lunney requested permission to leave the hearing, Brereton granted him permission to do so, and Lunney was escorted out.  Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 34-37.  Lunney was again found guilty of

---

[1]This officer is identified as Lieutenant "Brureton" in the complaint.

possessing a weapon and sentenced to nine months in the SHU with a corresponding loss of all

privileges.  Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 59.

Lunney subsequently filed a request for discretionary review with Brian Fischer, at that

time the Superintendent of Sing Sing.  Lunney Aff. ¶ 13; Am. Compl. at 2.  The disciplinary

disposition was affirmed by First Deputy Superintendent Paul Kikendall.  Lunney Aff. ¶ 13; Am.

Compl. at 2.  In an appeal to the Commissioner of the New York State Department of

Correctional Services, Lunney argued that he had not been provided with a copy of the hearing

disposition and that Selsky had no authority to order a new disciplinary hearing once the action

in state court had been filed.  Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10).  The Acting

Director of Special Housing rejected the appeal on November 7, 2002, although he reduced

Lunney's sentence from nine to six months in the SHU.  Id.; Review of Superintendent's

Hearing (reproduced as Ex. D to Motion to Dismiss) ("Hearing Review").

Lunney filed a second Article 78 petition on November 19, 2002, with respect to the

rehearing.  See Article 78 Petition (reproduced as Ex. E to Motion to Dismiss); Lunney Aff.

¶ 15.  On August 13, 2003, Justice Edward Sheridan of the Albany County Supreme Court

dismissed the misbehavior report and ordered the Department of Correctional Services

("DOCS") to expunge all references to the incident from Lunney's institutional record.  See

Decision, Order and Judgment, dated Aug. 13, 2003 (reproduced as Ex. D to Combined

Affirmation and Memorandum of Law in Opposition to Defendants' Motion for Dismissal, filed

July 6, 2004 (Docket #18) ("Pl. Opp. to Mot. to Dismiss")).  Justice Sheridan concluded that the

failure to provide Lunney with a copy of the hearing disposition was a violation of due process

4

and that Selsky had no authority to order the rehearing once Lunney filed an Article 78 petition

in state court.  Id. at 3.

Lunney was confined to the SHU for 180 days, Lunney Aff. ¶ 17, from May 21, 2002, to

November 21, 2002.  As is described in greater detail below, during this period Lunney asserts

that he was served with cold, spoiled, or poorly prepared food, given inadequate laundry

services, and denied hygiene items, showers, meals, and recreation by SHU staff.  Id. ¶¶ 18, 21-

23, 29 (incorporating Am. Compl. ¶ 15(a)-(d), (g)).  Lunney also asserts that he was criticized

and threatened by SHU staff for filing grievances related to prison conditions, and threatened

with transfer by Superintendent Fischer.  Id. ¶¶ 28, 30, 31 (incorporating Am. Compl. ¶ 15(f)-

(h)).  Lunney asserts that, on one occasion, he was physically assaulted by prison guards in

retaliation for complaining about conditions in his cell.  Lunney Aff. ¶¶ 24-25 (incorporating

Am. Compl. ¶ 15(e)(1)-(2)).

B.  Procedural History

The original complaint in this action was filed on March 29, 2004.  See Complaint

(Docket #2) ("Compl.").  It alleged the following claims: (1) violation of due process when

Selsky convened a new disciplinary hearing while the Article 78 review of the first hearing was

pending, Compl. at 7 (¶ 1); (2) violation of due process based on the failure to provide Lunney

with a timely written disposition of the second hearing, Compl. ¶ 8; (3) that in violation of the

Eighth Amendment, Lunney was subject to "overall poor" conditions of confinement in the Sing

Sing SHU, see id. at 7 (¶ 3), including the service of cold, spoiled, and improperly prepared

food; inadequate laundry services; inadequate law library services; and inadequate reading

material, Compl. ¶ 16; and (4) that he was retaliated against for filing grievances with respect to

5

conditions in the SHU, id. ¶¶ 17, 19; id. at 7 (¶ 2), in violation of his rights under the First

Amendment.  Lunney sought $10 million in punitive and/or compensatory damages.  Id. at 8.

     Defendants filed a motion to dismiss.  See Defendants' Memorandum of Law in Support

of Their Motion to Dismiss, filed June 10, 2004 (Docket #16).  On February 23, 2005, this Court

dismissed all of Lunney's claims except for: (1) his Eighth Amendment claim against Fischer

with regard to improperly prepared food; (2) his First Amendment claim against Fischer alleging

that he was threatened with physical retaliation for filing grievances; and (3) his due process

claim against Brereton regarding the failure to receive a written disposition of his disciplinary

hearing.  See Lunney v. Brureton, 2005 WL 121720, at *16 (S.D.N.Y. Jan. 21, 2005) ("Lunney

I"), adopted by, 2005 WL 433285, at *1 (S.D.N.Y. Feb. 23, 2005).  Lunney was given the

opportunity to replead his claims.  Lunney I, 2005 WL 121720, at *16.

     Lunney then filed an amended complaint, which restated most of the allegations included

in his original complaint.  See Id. ¶¶ 15.  It also contained new claims.  Significantly, Lunney

amended his original complaint to include as defendants Officers Michael Blot and Parrish

Frazier.  See Am. Compl. ¶ 16(h), (i).  The claims in the amended complaint are as follows:  (1)

Selsky deprived Lunney of his First and Fourteenth Amendment rights by ordering a new

disciplinary hearing and "depriving [him] of his right to challenge the original hearing in a court

of law," see id. ¶ 16(a); (2) Brereton violated Lunney's due process rights by failing to provide

him with a written copy of the disposition for the hearing on October 17, 2002, id. ¶ 16(f); (3)

Robert Murphy, Fischer, and Kikendall violated Lunney's due process rights by failing to

remedy Lieutenant Brereton's failure to provide a copy of the disposition, id. ¶¶ 16(b)-(d); (4)

Fischer violated Lunney's First Amendment rights by threatening to transfer him in retaliation

for filing grievances, id. ¶ 16(c); (5) Fischer failed to remedy the "numerous sub-standard conditions of confinement in the S.H.U.," and subjected him to "forced labor without pay," id.; (6) Sean Kober violated Lunney's First and Eighth Amendment rights by failing "to operate the Sing Sing I.G.R.C. in accordance with D.O.C.S. policy and thus[] deprived plaintiff of his means to petition the government for the redress of grievances," id. ¶ 16(e); (7) Anthony Chu violated Lunney's Eighth Amendment rights by failing to remedy "the many problems that existed with the S.H.U. food service program and for failing to provide plaintiff with wholesome, nutritious and properly prepared meals," id. ¶ 16(g); (8) Blot violated Lunney's First, Eighth, and Fourteenth Amendment rights by (a) assaulting him, threatening and harassing him, and depriving him of showers, meals and recreation, all in retaliation for Lunney's filing of grievances; (b) by co-signing a misbehavior report against Lunney for an incident in which Blot was not involved; (c) by threatening Lunney for making complaints against other staff members; (d) by depriving Lunney of access to clean clothing and/or failing to ensure that the clothing was laundered; (e) by failing to provide Lunney with basic hygiene items; and (f) by failing to remedy the plumbing problems in Lunney's SHU cell, id. ¶ 16(h); and (9) Frazier violated Lunney's First and Eighth Amendment rights by assisting Blot in the aforementioned violations. Id. ¶ 16(i).

On April 24, 2006, defendants moved for summary judgment on all claims.[2]  On June 13, 2006,

Lunney filed opposition papers.  See Plaintiff's Memorandum in Opposition to Defendants'

Motion for Summary Judgment (Docket #87) ("Pl. Mem."); Lunney Aff.  Lunney's papers did

not include a statement made in response to the Defendants' 56.1 Statement as required by Local

Civil Rule 56.1.  Defendants subsequently filed reply papers.  See Defendants' Reply

Memorandum of Law in Support of Their Motion for Summary Judgment, filed July 28, 2006

(Docket #91) ("Def. Reply Mem."); Lee Reply Declaration, filed July 28, 2006 (Docket #92)

("Lee Reply Decl.").  Lunney then submitted a sur-reply memorandum with an additional

affidavit.  Plaintiff's Sur-Reply Memorandum, filed Sept. 12, 2006 (Docket #96) ("Pl. Sur-

Reply"); Affidavit, dated Sept. 7, 2006 (Docket #97) ("Sur-Reply Aff.").

## II.  APPLICABLE LAW

### A.  Standard of Review on Summary Judgment Motions

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is

appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[2]See Notice of Motion for Summary Judgment, filed Apr. 24, 2006 (Docket #72);
Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed
Apr. 24, 2006 (Docket #73) ("Def. Mem."); Defendants' Rule 56.2 Statement, filed Apr. 24,
2006 (Docket #74); Declaration of Brian Fischer, filed Apr. 24, 2006 (Docket #75) ("Fischer
Decl."); Declaration of Paul Kikendall, filed Apr. 24, 2006 (Docket #76); Declaration of Robert
Murphy, filed Apr. 24, 2006 (Docket #77); Declaration of Michael Blot, filed Apr. 24, 2006
(Docket #78) ("Blot Decl."); Declaration of Parrish Frazier, filed Apr. 24, 2006 (Docket #79)
("Frazier Decl."); Declaration of Sean Kober, filed Apr. 24, 2006 (Docket #80); Rule 56.1
Statement, filed Apr. 24, 2006 (Docket #81) ("Def. 56.1"); Chu Declaration in Support of
Defendants' Motion for Summary Judgment, filed Apr. 24, 2006 (Docket #82); Declaration of
Thomas G. Eagen, filed Apr. 24, 2006 (Docket #83) ("Eagen Decl."); Declaration of Donald
Selsky, filed Apr. 24, 2005 (Docket #84) ("Selsky Decl."); Declaration of Benjamin Lee, filed
Apr. 24, 2006 (Docket #85) ("Lee Decl.").

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case."  Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

B. <u>Exhaustion</u>

1. <u>PLRA</u>

The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of . . . administrative remedies through the highest level for each claim is required." <u>Veloz v. New York</u>, 339 F. Supp. 2d 505, 514 (S.D.N.Y.), <u>aff'd</u>, 178 Fed. Appx. 39 (2d Cir. 2004); <u>see also</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'") (citations omitted). In addition, the exhaustion must be "proper" – that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2386-87 (2006) (internal citation and quotation omitted). Further, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter</u>, 534 U.S. at 532. The exhaustion requirement applies even when a plaintiff seeks relief not available in prison administrative proceedings, such as monetary damages. <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 740-41 (2001). Nonetheless, an inmate is not required to use this process where it "was reasonable for the inmate to conclude that his administrative remedies had been exhausted by [a] positive disposition" of some informal complaint. <u>Braham v. Clancy</u>, 425 F.3d 177, 183 (2d Cir. 2005); <u>accord</u> <u>Dixon v. Goord</u>, 224 F. Supp. 2d 739, 749 (S.D.N.Y.

2002) ("The exhaustion requirement is satisfied by resolution of the matter, i.e., an inmate is not required to continue to complain after his grievances have been addressed."); Perez v. Blot, 195 F. Supp. 2d 539, 546 (S.D.N.Y. 2002).

In this Circuit, when a plaintiff advances a plausible explanation for his failure to exhaust, a court engages in a three-part analysis:

> First, the court must ask: whether administrative remedies were in fact "available" to the prisoner. [Second], [t]he court should also inquire . . . whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [Third], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

Brownell v. Krom, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)) (emphasis and alterations in original); accord Curry v. Mazzuca, 2006 WL 250487, at *6 (S.D.N.Y. Feb. 2, 2006).

Finally, in Jones v. Bock, 127 S. Ct. 910 (2007), the Supreme Court held that courts must consider claims in a § 1983 complaint that have been exhausted despite the presence of unexhausted claims. 127 S. Ct. at 923-26.

### 2. New York's Inmate Grievance Program

In New York, formal exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program. See N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y.C.R.R. § 701.5(a). Next, after receiving a response from the IGRC, the inmate may appeal to the

11

superintendent of the facility.  Id. § 701.5(b).  Finally, after receiving a response from the

superintendent, the prisoner may seek any review of the superintendent's decision with the

Central Office Review Committee ("CORC").  Id. § 701.5(c).  See Hemphill, 380 F.3d at 682.

Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all

three levels of the grievance procedure."  Hairston v. LaMarche, 2006 WL 2309592, at *7

(S.D.N.Y. Aug. 10, 2006) (citing cases).

III.  DISCUSSION

      In his opposition papers, Lunney did not submit a statement in response to the

defendants' statement under Local Civil Rule 56.1.  In light of Lunney's pro se status, and in

light of the fact that he submitted an affidavit setting forth his disagreements with the

defendants' version of the facts, see Lunney Aff., the Court will exercise its discretion not to

penalize Lunney for this failure.  See, e.g., Phoenix Global Ventures, LLC v. Phoenix Hotel

Assocs., Ltd., 422 F.3d 72, 75 (2d Cir. 2005) ("district court has inherent authority to determine

when to overlook or excuse a departure from its own local rules").

      We now address the claims made in Lunney's amended complaint.

      A.  Eighth Amendment Claim Relating to Food in the SHU

      Lunney maintains his Eighth Amendment rights were compromised when he was served

food that was "cold, spoiled and poorly prepared" on "a near daily basis" during his detention in

the SHU.  See Lunney Aff. ¶ 18; Affirmation of A. Franco, DIN #01-A-5104, undated

(reproduced in Ex. E to Lunney Aff.), ¶ 3(a) (milk often spoiled, fruits and vegetables rotten,

appearance and quality of meals poor and unpalatable, inmates forced to refuse meals on

numerous occasions); Affirmation of Johnny Casaigne, DIN #04-A-2867, undated (reproduced

12

in Ex. E to Lunney Aff.), ¶ 3(a) (same); Deposition of Johnny E. Casaigne, dated June 24, 2005 (reproduced as Ex. F to Lunney Aff.), at 27 ("I rarely ate the food because when it did come it was . . . either spoiled, ice cold or wasn't even cooked right."); Deposition of Alisjandro Franco, dated June 24, 2005 (reproduced as Ex. G to Lunney Aff.), at 19 (refused meals "a few times"). Lunney states that he and other inmates "were often forced to refuse meals due to the poor quality of the food." See Lunney Aff. ¶ 18. Lunney also states that complaints and grievances about these problems were ignored, and that inmates "had to resort to refusing entire meals so as to get the attention of" defendants. See id. ¶ 19 (incorporating Am. Compl. ¶ 15(a)(1)). Finally, Lunney alleges that he suffered "[w]eight loss and muscle atrophy as a result of not receiving adequate meals." See Id. ¶ 18 (incorporating Am. Compl. at 18 (¶ 2)), and that on one occasion he and other inmates "became ill after eating," see Id. ¶ 18. He states that the illness consisted of "stomach cramping, nausea, slight fever, chills and diarrhea," and that the inmates received antacid tablets for their discomfort. See id. (incorporating Am. Compl. at 18 (¶ 2)); Ambulatory Health Record, dated Aug. 20, 2002 (reproduced as Ex. H to Lunney Aff.) (medical records reflecting a doctor's assessment of "upset stomach," for which Lunney was given antacid tablets). Defendants note that Lunney "acknowledged that other than one alleged incident involving a dinner of rice and beans, [he] was never treated for food poisoning or spoiled food and that he did not know other inmates in the S.H.U. who were treated for food poisoning or spoiled food." See Def. 56.1 ¶ 20 (citing Deposition of George Lunney, dated June 23, 2005 (reproduced as Ex. A to Lee Decl.) ("Lunney Dep."), at 123).

Defendants argue that Lunney has failed to exhaust his claim that the food in the SHU posed a threat to him and the other SHU inmates. See Def. Mem. at 11. With respect to this

claim, Lunney does not argue that the grievance process was unavailable to him, that there is a basis for estopping defendants from relying on the exhaustion doctrine, or that there are other special circumstances excusing his failure to exhaust, see Pl. Mem. at 9-10 – though, as described further below, he does make such an argument with respect to the excessive force and other retaliation claims.  See id. at 6-7, 12-13.  Rather, to support his contention that the food claim is exhausted,  Lunney cites to grievances SS-35888-02 and SS-36314-02, as well as to "a grievance dated Sept. 29, 2002 and the letters sent to D.O.C.S. officials."  See id. at 9 (citing Ex. K to Lunney Aff.).  Grievance SS-35888-02, however, complains only that SHU inmates "received only one cup of milk" and that the inmates "do not get what we're supposed to" in terms of "healthy food items."  See Grievance SS-35888-02, dated July 20, 2002 (reproduced in Ex. K to Lunney Aff.).  It mentions nothing about spoiled food or food that posed an immediate health risk to the inmates.  Grievance SS-36314-02 mainly states that Lunney received Rice Krispies for breakfast even though the menu called for Bran Flakes, and thus that he was not receiving the proper amount of fiber in his diet.  See Grievance SS-36314-02, dated Sept. 24, 2002 (reproduced in Ex. K to Lunney Aff.).  It then also makes a brief reference to his food being "ice cold."  Id.  Thus, neither of these grievances support the broad claims now being made in the complaint.

Lunney also provides a copy of a purported grievance dated September 29, 2002.  See Grievance (reproduced in Ex. K to Lunney Aff.).  This grievance – which defendants contend was considered as part of SS-36314-02, see Def. Reply Mem. at 8 n.2 – contains a fleeting reference to "spoiled or rotten food" but gives no specifics on when the serving of such food occurred.  This generic and unexplained reference to "spoiled or rotten food" – included at the

end of a grievance that focuses largely on whether the fiber content of the food met dietary guidelines – was not sufficient to alert the prison officials as to the claims now being made in this complaint.  While inmates are held only to a standard of "notice pleading" in grievances, see Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004), Lunney's grievance statement was far too vague to provide the defendants with notice of when such spoiled food was served, in what manner, and with what frequency.  It is thus insufficient to have exhausted this claim.

In any event, Lunney has not met his burden of showing he made the required appeals of even this grievance or that he should be excused from having done so.  Although he asserts that this grievance was denied and appealed to the Superintendent, he concedes that he did not appeal it to the CORC, stating only that, based on the Superintendent's reply, "an appeal to the C.O.R.C. was unnecessary."  Pl. Sur-Reply at 14.  Lunney's general allegations that his grievances "proved ineffective in correcting the problems with the food" and that he made additional verbal complaints, see Lunney Aff. ¶ 19, do not excuse his failure to exhaust.  See, e.g., Curry v. Fischer, 2004 WL 766433, at *6 (S.D.N.Y. Apr. 12, 2004) ("Since informal channels did not lead to the resolution of his complaints, Curry cannot be deemed to have informally exhausted his remedies.") (citing Hernandez v. Coffey, 2003 WL 22241431, at *3 n.4 (S.D.N.Y. Sept. 29, 2003) (informal exhaustion cannot be found where no resolution is reached)); see also Williams v. City of New York, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005) ("It is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements.").

Lunney makes general claims about the alleged mismanagement of the grievance process, see Pl. Mem. at 71-75, which are discussed further in section III.E below.  However,

there is no reason why these alleged failures should have excused his obligation to exhaust his claims regarding food.  Nor has he shown that he was otherwise prevented from filing grievances on food – a fact most obviously demonstrated by the fact that he filed various food-related grievances as has just been noted.  Notably, Lunney asserts that between February 2002 and March 2004 he filed "more than 100 grievances and more than a dozen complaints with outside agencies and D.O.C.S. officials regarding nearly every aspect of his confinement."  Pl. Sur-Reply at 19.

In sum, Lunney's claim that his Eighth Amendment rights were violated by the failure of the prison system to provide him with safe food, see Am. Compl. ¶ 16(g), is unexhausted and must be dismissed.

B.  Eighth Amendment Claim of Excessive Force

Lunney claims that he was assaulted by Officers Blot and Frazier "[d]uring his first week in the S.H.U." after he attempted to notify another officer that his sink and toilet were broken and he was missing certain personal hygiene items.  See Lunney Aff. ¶ 24.  He states that as a result of this assault, he suffered a "[s]mall cut to lip and another to left side of jaw with bruises and contusions to face and body."  See id. ¶ 25 (incorporating Am. Compl. at 18 (¶ 1)).  The defendants argue that this claim is unexhausted and that it fails on the merits.  See Def. Mem. at 10-11, 30-32.[3]

1.  Exhaustion

_____

[3] Lunney has also asserted that the assault occurred in retaliation for complaints he has made.  The retaliation claim with respect to the assault is discussed separately below in sections III.D.3.e (with respect to Blot) and III.D.4 (with respect to Frazier).

16

Lunney states that he did not file a grievance against Blot and Frazier for this assault until after he was transferred to Cayuga Correctional Facility nearly two years later, because Blot threatened him with retaliation if he did so, stating that "he would receive a misbehavior report for assault on staff if he . . . filed a complaint and claimed any injuries." See Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e)(2)).  Blot also told him that if he did file a grievance, "his time in S.H.U. would be longer and harsher." See id.  Lunney argues that under cases such as Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004), his failure to file a timely grievance was "justifiable." See Pl. Mem. at 5-7.

Defendants argue that Lunney's failure to exhaust the excessive force complaint in a timely fashion should not be excused for several reasons: (1) the grievances and appeals Lunney filed in 2004 at Cayuga were untimely, and regardless, made no reference to any instance of excessive force by Officers Blot and Frazier, but only to the Tier III hearing and "conditions of confinement" in the SHU, see Def. Reply Mem. at 6; (2) Lunney never mentioned any excessive force by Officers Blot and Frazier until he filed his amended complaint, id. at 7; and (3) the Second Circuit excuses failures to exhaust based on threats or retaliation only where "the record contain[s] documented proof of an inmate's prior complaints about the misconduct in a form other than a grievance along with allegations that an inmate was prevented from making these same complaints in the form of a grievance." See id. at 6 (citing Ziemba and Hemphill).

The first question is whether administrative remedies were in fact "available" to Lunney. Brownell, 446 F.3d at 311 (citing Hemphill, 380 F.3d at 686).  To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." Booth, 532 U.S. at 738; accord Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).  There is no dispute

17

that the prison "provided grievance procedures that inmates claiming excessive force could utilize," <u>see</u> Hemphill, 380 F.3d at 686 – specifically, the three-step process outlined in 7 N.Y.C.R.R. § 701.5.  Nor is there any dispute that Lunney used these procedures frequently both before and after the alleged incident with Blot and Frazier.  See Eagen Decl., Exs. A & B.  Indeed, Lunney concedes that he "has an extensive history of prosecuting grievances."  <u>See</u> Pl. Sur-Reply at 4.

The availability inquiry does not end here, however.  In <u>Hemphill</u>, the Second Circuit held that the test for deciding whether ordinary grievance procedures were "available" is an "objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available."  380 F.3d at 688 (citing <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003)).  The court went on to note that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts."  <u>See</u> <u>Hemphill</u>, 380 F.3d at 688.

Lunney's affidavit suggests that he failed to file a grievance regarding the assault by Officers Blot and Frazier until 2004 because Blot threatened him with retaliation if he did so.  <u>See</u> Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e)(2)).  Specifically, Lunney has asserted that Blot told him if he filed a grievance about the assault, "he would receive a misbehavior report for assault on staff" and that "his time in S.H.U. would be longer and harsher."  <u>See</u> <u>id.</u> Lunney states that this threat led him to avoid seeking medical attention or filing a complaint regarding the assault by Blot and Frazier until nearly two years later, when he was transferred to Cayuga Correctional Facility.  <u>See</u> <u>id.</u>  Because on this motion for summary judgment, we accept

as true the admissible evidence of Lunney, we must assume that Blot did in fact threaten Lunney in the manner Lunney has claimed.

Applying the "ordinary firmness" standard, it is certainly plausible that a reasonable factfinder could conclude that a prisoner in Lunney's situation would be deterred from complaining about an assault that had just occurred.  Here, Lunney alleged that he was beaten and that the beating was followed immediately by specific threats, some impliedly physical, if he filed a grievance.  See Hemphill, e.g., 380 F.3d at 688-89 (remanding for determination of availability of remedies where officer told plaintiff he had "better drop" his complaint regarding injuries sustained in a beating and not seek any medical attention or the officer would "make your life a living hell"); McCullough v. Burroughs, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (plaintiff excused from failing to exhaust remedies after he was assaulted by officers in retaliation for prior grievances and during the assault, officer expressly threatened that he would "get [him]") (alteration in original); accord Hepworth v. Suffolk, 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept. 29, 2006) (exhaustion excused where inmate was threatened for filing a grievance); Larry v. Byno, 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (inmate subject to physical assault and threats of violence excused from filing grievance); cf. Benjamin v. Comm'r New York State Dep't of Corr. Servs., 2006 WL 783380, at *4 (S.D.N.Y. Mar. 28, 2006) (suggesting in dictum that administrative remedies would be rendered unavailable where "the complaint specifically recounted threatening statements made by correctional officers and plaintiff's 'acquiescence' to those threats") (citing Hemphill, 380 F.3d at 683-84, 687).  Thus, Lunney has established a genuine issue of material fact with regard to the availability of administrative remedies for his claim of excessive force.

Defendants contend that because Lunney "has no corroborated documentation of previously complaining about unconstitutional conduct in some form," this Court should not excuse his failure to exhaust this claim. <u>See</u> Def. Reply Mem. at 7. They argue that <u>Hemphill</u> and <u>Ziemba</u> "require[]" this result. <u>See id.</u> at 6-7. However, neither <u>Hemphill</u> nor <u>Ziemba</u> held that a plaintiff alleging threats or retaliation in relation to an excessive-force claim is required to have "corroborated documentation of previously complaining" about such force. Each merely noted that there had been some such documentation. For example, in <u>Hemphill</u>, the plaintiff alleged that he failed to exhaust his administrative remedies with regard to an excessive-force claim because an officer had told him, "I'll make your life a living hell throughout this penal system because I have friends all over." <u>See</u> 380 F.3d at 684. The Second Circuit held that the district court was required to consider whether "some seemingly available remedies were rendered unavailable by the threats Hemphill received" or alternatively, whether the defendants' exhaustion defense was estopped by the threats the officer had allegedly made to the plaintiff. <u>See id.</u> at 688-89. While the court noted that the plaintiff had written a letter to the superintendent of the prison, <u>see id.</u> at 688, the court's holding with respect to these questions did not rely on this fact, <u>see id.</u> at 688-89, and specifically noted that his letter to the superintendent did not necessarily mean that administrative remedies were "available" to him. <u>Id.</u>

Nor does it help defendants' argument that Lunney waited until his transfer to another facility, nearly two years later, to submit a grievance of any kind. First, such a delay is consistent with the actions of someone in fear of retaliation by Blot. Second, if Lunney was justified in not filing a grievance at all, he should not be penalized for filing an untimely one.

20

In sum, construing the record in the light most favorable to Lunney, a factfinder could conclude that administrative remedies were not "available" to Lunney with respect to his claim of excessive force.  Accordingly, summary judgment cannot be granted on this question.[4]

2.  Merits

Lunney asserts that after he attempted to notify another officer about his plumbing problems and lack of personal hygiene items, Officer Blot approached his cell and told him to "shut the fuck up or we are coming in there and you will not like the results."  Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶ 15(e)(1)).  After further discussion between Lunney and Officers Blot and Frazier, Blot called for Lunney's cell door to be opened, and then "rushed into [his] cell and began punching [him] in the head and body."  Id.  Frazier then entered the cell "and placed [Lunney] in a choke hold for several minutes."  See id.  Lunney adds that he sustained "some bruises" from the attack, specifically that his "throat was bruised where Frazier had grabbed"

---

[4] Defendants assert that "in the event that the Court finds that there is a genuine dispute of material fact concerning exhaustion, and that plaintiff's claims cannot otherwise be dismissed, the proper procedure would be to hold an evidentiary hearing," Def. Reply Mem. at 10, rather than "proceed directly to trial."  Id.  There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury.  See, e.g., Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir.) (in motion to dismiss for failure to exhaust administrative remedies under PLRA, court may "decide disputed issues of fact"), cert. denied, 540 U.S. 810 (2003); Priester v. Rich, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006) (same); see also Dukes v. Doe, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering without discussion an "evidentiary hearing" on the question of exhaustion under the PLRA); cf. Pauling v. Sec'y of Dep't of Interior, 71 F. Supp. 2d 231, 232-33 (S.D.N.Y. 1999) (issues of fact with respect to equitable tolling of statute of limitations to be decided by the court).  As the Supreme Court has recently affirmed, however, exhaustion is an "affirmative defense," much like a statute of limitations defense.  See Jones v. Bock, 127 S. Ct. 910, 919-921 (2007).  Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that "issues of fact as to the application of that defense must be submitted to a jury."  Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243 n.2 (2d Cir. 1984).  Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court.

21

him and that he had a "couple [of] black and blues on my side," and that "about a week later bruises, you know, swelling went down."  See id. ¶¶ 24-25 (citing Lunney Dep. at 171-74); see also id. (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah.  I had some bruises.  I was pretty banged up.")).

Defendants argue that any injuries Lunney sustained were de minimis and thus not actionable under the Eighth Amendment.  See Def. Mem. at 30-32; Def. Reply Mem. at 26-27.

To establish an Eighth Amendment violation based on a claim of excessive force, "an inmate must meet both an objective and a subjective requirement."  See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999).  To meet the objective requirement, "the alleged violation must be 'sufficiently serious' by objective standards."  See id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The objective component is "context specific, turning upon 'contemporary standards of decency.'"  See Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  To meet the subjective requirement, the inmate must show that the prison officials involved "had a 'wanton' state of mind when they were engaging in the alleged misconduct."  See Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994). "[T]he 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  See Blyden, 186 F.3d at 262 (quoting Hudson, 503 U.S. at 7).  "Thus, [t]he key inquiry under Hudson and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (citing Davidson, 32 F.3d at 30) (internal quotation marks omitted).

"However, the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se . . . whether or not significant injury is evident.'" Griffin, 193 F.3d at 91 (quoting Blyden, 186 F.3d at 263). This result follows because "'[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.'" Blyden, 186 F.3d at 263 (quoting Hudson, 503 U.S. at 9). Nevertheless, "a de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Furthermore, courts in this circuit have held that "although the subjective component is 'inherently an inquiry into [the] defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendants' summary judgment motion, plaintiff has satisfied his burden on this element by merely pleading a scenario in which the use of force could not have been in good faith.'" See Watson v. Delgado, 2006 WL 1716869, at *5 (S.D.N.Y. June 20, 2006) (quoting Santiago v. Campisi, 91 F. Supp. 2d 665, 673 (S.D.N.Y. 2000)); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.").

In this case, Lunney states that Blot and Frazier first threatened him and then entered his cell and attacked him without provocation. See Lunney Aff. ¶¶ 24-25 (incorporating Am. Compl. ¶ 15(e)(1)). Because under Lunney's version of the facts, the officers' alleged use of

23

force could not have been in good faith, he has provided sufficient evidence of the subjective component of an Eighth Amendment violation.  See, e.g., United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ("the subjective element is satisfied in this case as there was absolutely no reasonably perceived need for the application of force"); Santiago, 91 F. Supp. 2d at 673 ("Assuming plaintiff's story to be true, defendant's alleged conduct is clearly unrelated to any 'good-faith effort to maintain or restore discipline.'") (citation omitted).

With regard to the objective component, Lunney has alleged that as a result of the assault by Blot and Frazier, he sustained "some bruises," specifically, his "throat was bruised where Frazier had grabbed" him and he had a "couple black and blues on my side," and that "about a week later bruises, you know, swelling went down."  See Lunney Aff. ¶¶ 24-25 (citing Lunney Dep. at 171-74); see also id. (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah.  I had some bruises.  I was pretty banged up.")).  While defendants argue that any injuries Lunney suffered were de minimis and not documented by medical records, see Def. Mem. at 30-32, they point to no case where alleged injuries of this kind were considered outside the protection or the Eighth Amendment.  Indeed, Griffin held that an inmate's Eighth Amendment claim survived summary judgment where "the only injuries he suffered were a bruised shin and swelling over his left knee," and "the only evidence he intended to offer in support of his claims was his own testimony."  See Griffin, 193 F.3d at 91.  The court explained that although the inmate's claim of excessive force was "weak and his evidence extremely thin, dismissal of the excessive-force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him."  See id.  Thus, one court has concluded that "bruising or

equivalent injuries may be found by a reasonable fact-finder to constitute minor rather than de minimis harm."  See Watson, 2006 WL 1716869, at *7 (citing McCrory v. Belden, 2003 WL 22271192, at *6 (S.D.N.Y. Mar. 22, 2004)) (internal quotation omitted).

Lunney's alleged injuries – involving bruising and contusions – are quite different from the claim of the prisoner in Boddie, who had alleged only that he had been "bumped, grabbed, elbowed, and pushed."  See Boddie, 105 F.3d at 862.  In dismissing the claim, Boddie noted that the plaintiff "does not maintain that he experienced any pain or injury as a result of the physical contact," and that he did not "allege facts that show that the defendants used force 'maliciously and sadistically to cause harm,' rather than 'in a good-faith effort to maintain or restore discipline.'"  See id.  Both these circumstances are present in Lunney's case, however.

In Espinal v. Goord, 2001 WL 476070 (S.D.N.Y. May 7, 2001), the court found the plaintiff's injuries to be de minimis where he was hit in the face two or three times, making his face turn red.  2001 WL 476070, at *13.  However, the plaintiff in that case described these injuries as "really nothing."  Id.  In Perkins v. Brown, 285 F. Supp. 2d 279 (E.D.N.Y. 2003), a prisoner was not permitted to base an excessive force claim on allegations of a "broken lip," swollen nose, eye, fingers, and wrists, jaw pain, chest bruising, and "stress disorder" resulting from being struck, where the only evidence was the plaintiff's testimony and it was contradicted by prior statements of the plaintiff and medical evidence  Id. at 284.  The district court also pointed to a number of factors reflecting that such injuries were in fact de minimis, including the plaintiff's assertion that his pain was "nothing major" or "nothing serious."  Id.  In contrast, Lunney has stated that his throat was bruised from being put in choke hold, that he had bruises on his side as well, and that the swelling from these injuries did not subside for about a week.

25

_____To the extent the defendants argue that the lack of medical records showing treatment is grounds for dismissing Lunney's claim, the Court rejects this argument inasmuch as there is no requirement that the claim of injury be substantiated in contemporaneous medical records.  See Griffin, 193 F.3d at 91 (Eighth Amendment claim permitted to proceed to trial even though only evidence supporting it was plaintiff's testimony).  Thus, cases have frequently denied summary judgment for excessive-force violations while noting the absence of corroborating medical records.  See, e.g., Atkins v. County of Orange, 372 F. Supp. 2d 377, 399 (S.D.N.Y. 2005); Davis v. Patrick, 2000 WL 1154065, at *1 (S.D.N.Y. Aug. 14, 2000); Baskerville v. Goord, 2000 WL 897153, at *1-2 (S.D.N.Y. July 6, 2000).

Finally, Blot and Frazier are not protected by qualified immunity on this claim.  Qualified immunity attaches where (1) a constitutional right would have been violated on the facts alleged; but (2) it would have been objectively reasonable for the defendant to have believed that his actions did not violate clearly established law.  See Saucier v. Katz, 533 U.S. 194, 200-201 (2001).  Lunney has a constitutional right to be free from a correction officer's use of excessive force, and it could not be objectively reasonable for Officer Blot or Officer Frazier to have believed that the use of excessive force is allowed under the law.  See Calamia v. City of New York, 879 F.2d 1025, 1036 (2d Cir. 1989) ("The right of an individual not to be subjected to excessive force has long been clearly established."); Johnson v. City of New York, 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (citing cases).

C.  Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene Items

_____Lunney claims that prison officials violated his Eighth Amendment rights based on the existence of inadequate laundry services, plumbing problems, and the deprivation of personal

26

hygiene items.  See Lunney Aff. ¶¶ 20-23.  While the defendants argue that these claims are

unexhausted, see Def. Mem. at 11, it is unnecessary to reach this question because the claims fail

on the merits.

The Supreme Court has held that "[t]he Constitution 'does not mandate comfortable

prisons,' but neither does it permit inhumane ones."  Farmer v. Brennan, 511 U.S. 825, 832

(1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  The Eighth Amendment

imposes an obligation on prison officials to provide "humane conditions of confinement"

including "adequate food, clothing, shelter, and medical care."  Id.  To establish a violation of

the Eighth Amendment on the basis of inhumane prison conditions, a plaintiff must show that the

deprivation is sufficiently serious as to result in a denial of "'the minimal civilized measure of

life's necessities,'"  Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at

347), and that the prison officials acted with "a sufficiently culpable state of mind."  Hathaway

v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).  In the context of conditions of

confinement, the requisite mental state for the prison officials is "deliberate indifference."

Wilson, 501 U.S. at 302-03.

1.  Laundry Services

Lunney re-alleges the claim from his original complaint that the laundry services in the

SHU were inadequate.  See Lunney Aff. ¶¶ 20-21.  In rejecting this claim on the motion to

dismiss, this Court held that there "is no Eighth Amendment violation . . . in instances where

inmates are provided the opportunity and the supplies to wash their own clothes."  See Lunney I,

2005 WL 121720, at *8 (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986) (no

constitutional violation where inmates were permitted to wash their clothes in sinks and were

provided with laundry detergent)); Benjamin v. Fraser, 161 F. Supp. 2d 151, 178-79 (S.D.N.Y.

2001) (availability of sinks and laundry detergent or bar soap sufficient under the Eighth

Amendment), aff'd in relevant part and vacated in part, 343 F.3d 35 (2d Cir. 2003).  The Court

thus concluded that "Lunney's mere allegation that his clothes were returned to him without

being cleaned on various occasions does not state an Eighth Amendment claim as to inadequate

laundry services."  See Lunney I, 2005 WL 121720, at *8.  Lunney asserts that his sink was

small and that he was not given soap specifically for laundry purposes.  Lunney Dep. at 167.  But

he has not submitted evidence that would allow a reasonable to jury to conclude that he could

not achieve some level of cleanliness with the materials he had.  See generally Benjamin, 161 F.

Supp. 2d at 178-79.  That Lunney asserts he was without soap for eight days and had a clogged

sink for five, as described in the next section, shows at most that he lacked the means to clean his

own clothing for a relatively brief period.  As such, there was no Eighth Amendment violation.

2.  Plumbing Problems and Failure to Provide Personal Hygiene Items

Lunney alleges that he "was placed in a cell where the sink was clogged and there was no

running water."  See Lunney Aff. ¶ 22.  He states that he made "verbal complaints" and that the

sink was repaired "on about plaintiff's fifth day in S.H.U."  See id. (incorporating Am. Compl.

¶ 15(c)).  He also states that he did not receive "soap, toothpaste, a toothbrush, and other hygiene

items."  See Id. ¶ 23.  While he states that his verbal complaints were ignored, he adds that the

problem "was informally resolved on May 29, 2002 when C.O. Lebron of the I.G.R.C. corrected

the problem."  See id.

With regard to toiletries and hygiene items, Lunney fails to show that such a denial rose

to the level of deliberate indifference to his health or safety.  Courts have typically held that

temporary deprivations of toiletries do not violate the Eighth Amendment.  See Trammell v.

Keane, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two

weeks – while perhaps uncomfortable – does not pose such an obvious risk to an inmate's health

or safety to suggest that the defendants were 'aware of facts from which the inference could be

drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference'")

(quoting Farmer, 511 U.S. at 837) (alterations in original); Fernandez v. Armstrong, 2005 WL

733664, at *5-6 (D. Conn. Mar. 30, 2005) (up to 16-day deprivation of toothbrush, toothpaste,

soap, and shampoo did not violate the Constitution).

 With regard to Lunney's claim of no running water, defendants have pointed to evidence

that Lunney filed a grievance on May 23, 2002, regarding the plumbing problems in his cell,

Grievance SS-35563-02, dated May 23, 2002 (reproduced as Ex. J to Lunney Aff.), and that it

was repaired the next day.  See SHU Activity Log, dated May 24, 2002 (reproduced as Ex. D to

Lee Reply Decl.).  Even if Lunney's cell sink lacked running water for five days, as he claims,

he does not show an Eighth Amendment violation given that there is no evidence that he was

deprived of water entirely during this period.  The "[l]ack of access to running water, by itself,

does not constitute the denial of the minimal civilized measure of life's necessities." James v.

Monroe County Jail, 2005 WL 2030730, at *3 (W.D.N.Y. Aug. 23, 2005) (no constitutional

violation where inmates claimed they lacked running water from cell sinks for several hours

every night for over four months); see also Johnson v. Comm'r of Corr. Servs., 699 F. Supp.

1071, 1074 (S.D.N.Y. 1988) (plaintiff confined for one week in a cell with an inoperable sink did

not suffer a constitutional violation because he was provided drinks with meals); Castro v.

Chesney, 1998 WL 767467, at *4 (E.D. Pa. Nov. 3, 1996) (no constitutional violation where

plaintiff placed in a "dry cell" without running water for several days, given water "sometimes" when he asked for it and water was turned on every other day so he could wash his face and brush his teeth).

### 3. Personal Involvement

In any event, even if some constitutional deprivation had been shown, Lunney's submission does not provide facts that would show that any particular defendant sued here was personally involved in committing the violation. As the Second Circuit has noted, "[a]n individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority.'" Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). He can only be held liable if he was "personally involved in the alleged deprivation." Id. While there are number of ways in which such involvement can be shown, see, e.g., Back, 365 F.3d at 127 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)), Lunney has not provided evidence (as opposed to speculation) as to any of them.

In sum, defendants are entitled to summary judgment on Lunney's claims of a temporary lack of running water, plumbing problems, and denial of personal hygiene items.

### D. First Amendment Retaliation Claims

Lunney asserts that he was assaulted by Blot and Frazier because he made verbal complaints about SHU conditions, see Lunney Aff. ¶ 24; that Blot threatened him with physical violence on several occasions for his writing of grievances, see id. ¶¶ 30-31; that Blot denied him recreation, meals, and showers because of his complaints, see id. ¶ 29; and that Fischer threatened to transfer him to Attica for writing grievances, see id. ¶ 28 (incorporating Am.

30

Compl. ¶ 15(f)).  He also asserts in his amended complaint that Brereton fired him from his

position as a porter "as a means of retaliation."  Am. Compl. at ¶ 15(g)(2).  The defendants argue

that these claims are unexhausted and fail on the merits.  See Def. Mem at 9-12, 12-17; Def.

Reply Mem. at 9-10, 11-15.

In its prior ruling, the Court dismissed Lunney's general allegations of threats and

harassment because "comments that are merely 'insulting' or 'disrespectful' do not give rise to a

constitutional violation."  See Lunney I, 2005 WL 121720, at *11 (citations omitted).  The Court

also dismissed Lunney's claim that Fischer threatened to transfer him to another facility for

writing grievances because, inter alia, Lunney did not allege that he was transferred because he

filed grievances against prison officials.  See id.  However, the Court did not dismiss Lunney's

claim that he was threatened with physical violence for filing grievances.  See id. (citing

Hernandez v. Goord, 312 F. Supp. 2d 537, 545 (S.D.N.Y. 2004) (threatened bodily injury and

threats to inmate's life sufficient to state a claim)).  Lunney's retaliation claims re-appeared in

somewhat different form in his amended complaint, see Am. Compl. ¶ 16(c), which also contains

new retaliation claims against Blot, Frazier and Brereton.  See id. ¶¶ 15(g)(2), 16(h), (i).

### 1.  Law Governing First Amendment Retaliation

The First Amendment protects prisoners from retaliation for engaging in protected

speech, including submitting grievances regarding prison conditions.  See Graham v. Henderson,

89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a prisoner for pursuing a grievance violates

the right to petition government for the redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983.") (citing Franco v. Kelly, 854 F.2d 584,

589 (2d Cir. 1988)).  "[I]ntentional obstruction of a prisoner's right to seek redress of grievances

'is precisely the sort of oppression that . . . section 1983 [is] intended to remedy.'" Id., 89 F.3d at 80 (quoting Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987)) (alterations in original).  A prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

Moreover, in the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated."  Colon, 58 F.3d at 872 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  Thus, courts "examine prisoners' claims of retaliation with skepticism and particular care."  Colon, 58 F.3d at 872.

2.  Claims against Fischer

In his affidavit, Lunney alleges that Fischer "repeatedly threatened" him "in retaliation for his filing of grievances and complaints regarding S.H.U. conditions."  See Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)) (Lunney "subjected to threats of being transferred to Attica" by Fischer, who "made it quite clear to plaintiff that he did not like the fact that plaintiff was writing grievances and complaints to outside agencies.").  He further states that his prison records reflect that Fischer attempted to transfer him "under the reason that plaintiff's behavior in Sing Sing was unsuitable."  See Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)).  While defendants argue that Lunney's claim should be dismissed because he did not properly exhaust the claim in accordance with the PLRA, it is not necessary to reach this question because the claim fails on the merits.

Lunney's First Amendment claim against Fischer is based on his claim that Fischer "threaten[ed]" him in response to his grievance writing.  Am. Compl. ¶ 16(c); Lunney Aff. ¶ 28. But Lunney's only specific allegation on this point is that Fischer "did . . . try to transfer plaintiff but D.O.C.S. officials in Albany, New York cancelled the transfer."  Lunney Aff. ¶ 28 (emphasis added); see also Pl. Mem. at 14-17.

This allegation cannot meet the requirement that the plaintiff experience an "adverse action."  Pidlypchak, 389 F.3d at 380.  While "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim."  Dawes v. Walker, 239 F.3d 489, 492-93 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  Only retaliatory conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim.  Id. at 493. The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."  Pidlypchak, 389 F.3d at 381 (citing Davis v. Goord, 320 F.3d 346 (2d Cir. 2003)).

The allegation in the complaint regarding the threats of transfer cannot be objectively viewed as deterring a person of ordinary firmness from exercising First Amendment rights.  This is particularly true where Lunney's allegations are devoid of any dates or descriptions of the manner in which Fischer made the alleged threats.  Moreover, the lack of dates also makes it impossible to determine whether there was a causal connection between the filing of grievances and the adverse action.  Accordingly, summary judgment on this claim should be granted.  It is,

therefore, unnecessary to reach the question of qualified immunity.  See Def. Mem. at 34; Def. Reply Mem. at 25.[5]

3.  Claims against Blot

Lunney asserts that (1) Officer Blot denied him showers, meals, and recreation in retaliation for his grievances, see Lunney Aff. ¶ 29; (2) that Blot co-signed a misbehavior report against him stemming from an incident to which Blot was not a party; and that Blot subsequently told Lunney, "If I ever hear about you complaining about another officer you'll be sorry.  You won't be so lucky next time," see id. ¶ 31 (incorporating Am. Compl. ¶ 15(h)); (3) that Blot threatened to harm Lunney physically if Lunney refused Blot's offer of a bribe to stop writing grievances, see id. ¶ 30; and (4) Blot assaulted him in retaliation for verbal complaints about the conditions in the SHU.  See id. ¶¶ 24-25.

Defendants contend that each of these claims should be dismissed because Lunney failed to exhaust them and also dismissed on the merits.  See Def. Reply Mem. at 5-7, 10.  Defendants further contend that Blot is entitled to qualified immunity "from plaintiff's retaliation claim involving an alleged false misbehavior report . . . ."  Def. Mem. at 34; Def. Reply Mem. at 29-30.

a.  Exhaustion of Claims Against Blot

---

[5] Lunney was transferred some time later, in 2004, to Cayuga Correctional Facility, long after the grievances and alleged threats by Fischer were made.  See Lunney Aff. ¶ 26.  Lunney has not alleged any facts regarding this transfer and also has not provided evidence that Fischer caused this transfer.  Notably, there is an affidavit from Fischer stating that he was not involved in Lunney's transfer.  See Fischer Decl. ¶¶ 5-7; see generally Davidson v. Donnelly, 2004 WL 1941349, at *3 (W.D.N.Y. Aug. 29, 2004) (no claim for retaliatory transfer where plaintiff provided no evidence on reason for transfer and prison officials gave reasons).

_____As to the four claims with respect to which the exhaustion defense has been raised, we have already discussed why Lunney should be excused from having failed to grieve the assault claim, see section III.B.1, and the same reasons that excuse the failure to grieve the assault apply equally to the claim that the motive for the assault was to retaliate for protected activity. Accordingly, there is no need to discuss exhaustion with respect to this aspect of the retaliation claim against Blot.

In addition, we conclude, for the reasons discussed in section III.D.3.c below, that Lunney's claim with respect to the false misbehavior report would fail on the merits. Accordingly, our discussion of exhaustion relates only to claims (1) and (3): that is, the claim regarding the denial of showers, meals, and recreation and the claim regarding the threat of physical violence.

_____Lunney alleges that Blot said: "If I ever hear about you complaining about another officer you'll be sorry.  You won't be so lucky next time."  Am. Compl. ¶ 15(h).  He also states that "[Blot] would come in and threaten guys and tell guys 'listen, I'm going to write you up and you will get a new charge,'" Lunney Aff. ¶ 30 (citing Lunney Dep. at 190); and generally, that Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he . . . continued to write grievances."  Am. Compl. ¶ 15(g).  More specifically, in his deposition, Lunney states that Blot became "offended and upset about my writing grievances and he said he didn't like people that wrote grievances"; that he "would complain that he didn't like people writing grievances" and would "criticiz[e]" him for it.  Lunney Dep. at 187.  Lunney recounts one conversation as follows:

> [H]e came to me one day and said "listen, I want you to stop writing grievances."
> And I said "listen, you guys are doing a lot of things wrong down here."  He said

"listen, if you don't stop writing grievances I'm going to break your fuckin' neck."
He said "you're going to have a hard time in the SHU."

Id.

As already discussed in the context of Lunney's excessive-force claim, <u>see</u> section III.B the Second Circuit has held that "seemingly available remedies [may be] rendered unavailable by threats," <u>Hemphill</u>, 380 F.3d at 688, if a "similarly situated individual of ordinary firmness" would not have "deemed them available." <u>Id.</u> (citations and quotations omitted). Likewise, the Second Circuit has held that threats by prison authorities may provide grounds for estoppel if defendants "took affirmative action to prevent [the prisoner] from availing himself of grievance procedures." <u>Ruggiero v. County of Orange</u>, 467 F.3d 170, 178 (2d Cir. 2006) (citing cases).[6]

Liberally construed, Lunney's argument can be read as asserting both that (1) his failure to follow the formal exhaustion process should be excused because Blot's threats rendered the formal grievance process effectively unavailable to him and (2) that Blot's exhaustion defense was estopped by Blot's alleged threats.

Lunney's general assertions regarding threats – without the specific of dates or content of threats – might not be sufficient permit a finding on these points. But his assertion that Blot stated "if you don't stop writing grievances I'm going to break your fuckin' neck," Lunney Dep. at 187, coupled with the allegation that Blot had actually assaulted him previously, would be sufficient to allow a factfinder to conclude that a "similarly situated individual of ordinary

---

[6] The Second Circuit has recognized that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, (b) situations in which administrative remedies are not 'available' to the plaintiff . . . ." <u>Giano v. Goord</u>, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

firmness" would not have deemed the inmate grievance process available with respect to grievances that involve conduct by Blot.  See, e.g., Hepworth v. Suffolk County, 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept. 29, 2006) (inmate beaten and threatened with further violence after testifying against correction officers); Larry v. Byno, 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (physical assault coupled with threat to kill inmate after inmate mailed a complaint); McCullough, 2005 WL 3164248, at *3-4 (assault with threat to "get [him]" if he filed another grievance).  It also raises questions regarding estoppel as to any claim against Blot. Thus, a genuine issue of material fact exists as to (1) whether administrative remedies, though nominally "available," were functionally available to Lunney to grieve these claims – the deprivation of meals, showers and recreation and the threat of physical violence by Blot – against Blot and/or (2) whether Blot's alleged threats estop defendants from raising exhaustion as an affirmative defense.

We now address the merits of the four claims against Blot.

b.  The Merits of Lunney's Allegation that Blot Denied Him Showers,
Meals, and Recreation

Lunney states that he was deprived of showers "at least twice a week."  Lunney Dep. at 182.  He asserts that this occurred "[b]ecause of problems I was having with Blot and my being vocal about the problems, the conditions of SHU."  Id. at 183.  He asserts that he was supposed to get three showers a week.  See Pl. Mem. at 22.  As to recreation, Lunney states that at least "three or four times a week [] Blot would come . . . by with the list.  He'd ask guys if they want recreation.  We'd be brought down for breakfast.  He'd tell me 'you're staying here.'"  Id. (citing Lunney Dep. at 185-86).  Lunney makes no specific statements as to Blot's depriving him of

37

meals.  While Blot denies ever depriving Lunney of meals, showers or recreation, see Blot Decl.

¶ 4, we accept Lunney's assertions as true for purposes of this motion.

Defendants challenge whether Lunney has established the second and third prongs of a

prima facie case of retaliation: namely, whether (1) the deprivations constitute "adverse action,"

and (2) there is a causal connection between these deprivations and his grievance writing.  Def.

Mem. at 15.

i.  Adverse Action.  As an initial matter, defendants argue that Lunney's claim lacks

sufficient specificity.  Def. Reply Mem. at 13.  As is true in response to any motion for summary

judgment, Lunney was required to provide evidence sufficient to allow a jury to find in his favor.

Thus, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a

genuine issue of fact."  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).  Lunney's

allegations regarding denial of meals are completely lacking in any such specifics.  His

allegations regarding the denials of showers and recreation, however, are sufficiently detailed to

allow a trier of fact to conclude that such denials occurred.  Accordingly, we limit our discussion

to the issue of whether the denial of showers and recreation constitute "adverse action."

As noted, the Second Circuit has held that while "the scope of conduct that can constitute

actionable retaliation in the prison setting is broad, it is not true that every response to a

prisoner's exercise of a constitutional right gives rise to a retaliation claim."  Dawes, 239 F.3d at

492-93.  Only retaliatory conduct which would "deter a similarly situated individual of ordinary

firmness from exercising his or her constitutional rights" may support such a claim.  Id. at 493.

Thus, the conduct must be "specifically directed at plaintiff[] and substantial enough to deter

legitimate grievances against prison officers."  Salahuddin v. Mead, 2002 WL 1968329, at *5

(S.D.N.Y. Aug. 26, 2002).  Conduct that is <u>de minimis</u> does not provide this deterrent effect and does not give rise to actionable retaliation.  <u>Dawes</u>, 239 F.3d at 493; <u>see</u> <u>also</u> <u>Davidson v. Chestnut</u>, 193 F.3d 144, 150 (2d Cir. 1999) (citing <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir. 1982) ("[S]ince there is no justification for harassing people for exercising their constitutional rights[, harassment] need not be great in order to be actionable.  Yet,. . . [i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .")) (alterations in original).  What is <u>de minimis</u> varies according to context.  <u>See</u> <u>Dawes</u>, 239 F.3d at 493 ("[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse") (alteration in original) (citing <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir. 1999)).  Thus, in the prison context, not all harms constitute legally sufficient grounds for retaliation claims.  <u>See</u> <u>Salahuddin</u>, 2002 WL 1968329, at *4-5 (citing cases).

Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation.  <u>Chestnut</u>, 193 F.3d at 150 (remanding to district court on interlocutory appeal where "there [was] a serious question as to whether . . . [plaintiff's] asserted one-day denial of an opportunity to exercise, w[as] more than <u>de minimis</u>"); <u>Snyder v. McGinnis</u>, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (deprivation of meal on two occasions is <u>de minimis</u> and does not state a claim for retaliation); <u>Lyons v. Wall</u>, 2006 WL 2945256, at *5 (D.R.I. Oct. 13, 2006) (sporadic cold showers are <u>de minimis</u>).  Here, however, Lunney alleges a routine denial of showers and recreation such that he regularly had one shower

39

a week instead of two, and three to four hours of recreation a week instead of the normal seven. Pl. Mem. at 22 (citing Lee Decl. Ex. J §§ 304.2, 304.3, 304.5; Lunney Aff. Ex. M at 140-142); see also Ortiz v. McBride, 380 F.3d 649, 655 (2d Cir. 2004) (discussing normal conditions of the SHU as two showers a week and one hour of recreation a day).  Defendants have pointed to no case where a constant denial of showers and recreation, in the proportions alleged here, was deemed to be de minimis as a matter of law.[7]

In sum, defendants are not entitled to summary judgment on this point.

ii.  Causal Connection.  Lunney must also show that there was "a causal connection between the protected speech and the adverse action."  Pidlypchak, 389 F.3d at 380.  Colon discusses a number of factors relevant to whether a causal connection exists, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.  58 F.3d at 872-73; accord Sloane v. Mazzuca, 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006); Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).

Here, a reasonable factfinder might view Blot's decision to deny Lunney recreation and shower privileges as being prompted by Lunney's grievance writing.  Lunney states that upon arrival to the SHU, he immediately complained about the conditions of his cell, both verbally and through the filing of written grievances.  Lunney Aff. ¶ 24 (incorporating Am. Compl.

_____

[7]While defendants argue that "the alleged denial of meals, recreation and showers did not deter the exercise of plaintiff's rights as evidenced by his many grievances," Def. Mem. at 15, as noted, the test for adverse action is an "objective test [which] applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."  Pidlypchak, 389 F.3d at 381 (citing Davis, 320 F.3d at 353).

40

¶ 15(c)-(e)).  On his third day in the SHU, Officers Blot and Frazier assaulted him, and Blot

warned him that he would suffer consequences if he filed a grievance.  Id. (incorporating Am.

Compl. ¶ 15 (e)(1)-(2)).  Nonetheless, Lunney continued to file grievances in the SHU.  See, e.g.,

Ex. K to Lunney Aff.  Blot stated to him that he "didn't like people that wrote grievances" and

told him "listen, I want you to stop writing grievances" and that "if you don't stop writing

grievances I'm going to break your fuckin' neck" and that "you're going to have a hard time in

SHU."  Lunney Dep. at 187.  At the same time, Lunney states that he was routinely denied

showers and recreation.  Lunney Aff. ¶ 29.  Thus, the evidence for causation centers on (1) the

fact that there is no explanation provided for the denial of showers and recreation and (2) the

evidence that Blot complained to Lunney about his writing grievances and specifically

threatened Lunney about them during the same time period that the denial of showers and

recreation was taking place.  Lunney Dep. at 186-87.  While it may also be reasonable to infer,

as defendants argue, that the deprivations, if they did occur, were a result Lunney's "extensive

disciplinary history," Def. Mem. at 15, on a motion for summary judgment, the Court must draw

"all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  Thus,

Lunney has raised a genuine issue of material fact as to whether Blot denied showers and

recreation in retaliation for Lunney's grievances.[8]

      c.  The Merits of Lunney's Allegation that Blot Filed a False Misbehavior
      Report

The filing of a false misbehavior report in response to constitutionally protected activity

can constitute actionable retaliation.  See Graham, 89 F.3d. at 79-81 (allegation that defendants

---

[8]Defendants have made only a conclusory argument as to qualified immunity on this point, see Def. Mem. at 33-34, and thus we do not consider it here.

filed false misbehavior reports against plaintiff in retaliation for his leadership in filing a grievance to protest the removal of workshop showers); <u>Jones v. Coughlin</u>, 45 F.3d 677-78, 680 (2d Cir. 1995) (per curiam) (allegation that defendants, in retaliation for plaintiff's filing administrative complaint, filed a false misbehavior report that led to 120 days of punitive segregation).

Lunney asserts that a misbehavior report dated June 22, 2003 – approximately six months after he left the SHU – "stemmed from plaintiff having sent letters to several facility staff members" – not including Blot – "complaining about being harassed by another staff member, C.O. Davis." <u>See</u> Am. Compl. ¶ 15(h); <u>see also</u> Misbehavior Report (reproduced in Ex. G. of Lee Decl.). Officer Gary, one of the officers to whom Lunney had sent the letter, wrote the misbehavior report because Lunney's letters violated facility correspondence rules that prohibit "correspond[ence] with dep[artment] employees [without] the express permission of the superintendent." <u>See</u> Lee Decl. Ex. G (citing DOCS Directive 4422). Blot "endorsed" the misbehavior report. <u>See</u> Def. 56.1 ¶ 22. Lunney was subsequently found guilty of this charge based on "[his] admissions that [he] willfully wrote to a total of 15 officers including officer Gary," <u>see</u> Lee Decl. Ex. G, and sentenced to 30 days' keeplock, loss of packages, loss of commissary, and loss of phone privileges.[9] <u>See</u> <u>id.</u> Defendants argue that Lunney has not met the elements of a retaliation claim. Def. Mem. at 16-17; Def. Reply Mem. at 14.

Lunney's claim is simply disposed of based on the evidence that the misbehavior report had a legitimate justification. The Second Circuit has held that, "[r]egardless of the presence of

---

[9] This finding of guilt was "apparently overturned," or at least "modified" on appeal, though to what extent and the reason for such action is not clear from the record. <u>See</u> Def. Mem. at 16 (citing Lee Decl. Ex. I).

retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual
motivation, i.e., that even without the improper motivation the alleged retaliatory action would
have occurred."  Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing Mt. Healthy City
Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Thus, where a plaintiff has met his
"initial burden of showing that an improper motive played a substantial part in defendant's
action," the defendant may still obtain summary judgment if the defendant can "show it would
have taken exactly the same action absent the improper motive."  Id.; see also Lowrance v.
Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (affirming dismissal on summary judgment because
correction officer's actions were of mixed motives and "would have been issued on proper
grounds alone."); see also Sher v. Coughlin, 739 F.2d 77, 81-82 (2d Cir. 1984) (affirming
summary judgment dismissal of prisoner's retaliation claim where dual motivation existed for
prisoner's transfer to another facility).

Assuming without deciding that Lunney had met his initial burden of showing that an
improper motive played a substantial part in the decision to discipline him, Lunney concedes that
the misbehavior report "stemmed from" a letter he wrote to Officer Gary.  Am. Compl. ¶15(h).
It is undisputed that writing letters to prison guards violates DOCS's policy.  See DOCS
Directive 4422.  Lunney has provided no evidence of instances in which prisoners wrote letters
to prison guards without receiving disciplinary action.  Based on the evidence in the record, it
would be purely speculative for a factfinder to conclude that the prison would not have taken the
same action against Lunney regardless of any motive it had to punish him for writing grievances.
Accordingly, defendants are entitled to summary judgment on this claim.

> d.  The Merits of Lunney's Allegation that Blot Threatened Physical
> Violence

Lunney states that Blot threatened him physically, both generally in response to his continued filing of grievances, see Lunney Aff. ¶¶ 29-30, and specifically in response to his complaint about another officer.  See id. ¶ 31.  Lunney's most specific allegations consist of two statements:  (1) "If I ever hear about you complaining about another officer you'll be sorry.  You won't be so lucky next time," Am. Compl. ¶ 15(h), and (2) "[I]f you don't stop writing grievances I'm going to break your fuckin' neck."  Lunney Aff. ¶ 30 (citing Lunney Dep. at 186-87).  He also states more generally that  Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he [] continued to write grievances."  Am. Compl. ¶ 15(g).  Defendants do not address this claim in their papers, although they argue that Blot is entitled to qualified immunity on it.  See Def. Reply Mem. at 30.

Case law reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered.  Compare Hepworth, 2006 WL 2844408, at *8-9 (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence . . . such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate]. . .  for exercising his First Amendment"); Brown v. Coughlin, 965 F. Supp. 401 (W.D.N.Y. 1997) (threat to inmate that when officers were "done with him" he would not want to "file any more complaints" sufficient for First Amendment retaliation claim); Thaddeus-X, 175 F.3d at 396, 398 ("In the prison context . . . [h]arassment, physical threats" would "certainly be adverse" action),  with Bartley v. Collins, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action);  Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y.

44

2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim," especially considering the fact that the threat was never carried out); Cruz v. Hillman, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that correction counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful," insufficient to state a retaliation claim).  Given the directness and specificity of the alleged threats here, a factfinder could permissibly decide that the threats were such that it would deter an inmate of "ordinary firmness" from engaging in protected activity.

Nor should Blot be entitled to qualified immunity.  It would not have been "objectively reasonable" for Blot to have believed that it did not violate "clearly established" law regarding retaliation to tell Lunney that he would "break [his] fuckin' neck" if Lunney continued to write grievances.  In other words, the contours of the right to be free from First Amendment retaliation were "sufficiently clear that [Blot] would [have] underst[ood] that what he [was] doing violate[d] that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

### e.  The Merits of Lunney's Allegation of Retaliatory Assault

We have already discussed Lunney's claim that the assault by Blot and Frazier constituted an Eighth Amendment violation.  See section III.B above.  In addition, Lunney asserts that this same assault occurred "because of a verbal complaint he made to another officer regarding his not having hygiene items and the problems with his sink and toilet."  Lunney Aff. ¶ 24

45

(incorporating Am. Compl. ¶¶ 15(e)(1)-(2)).  In his amended complaint, Lunney specifically

pleads this as a First Amendment claim as well.  See Am. Compl. at ¶ 16(h).

Defendants do not make any arguments regarding this claim specifically.  Nonetheless,

because they moved for summary judgment as to "plaintiff's First Amendment retaliation claim"

generally on the ground that there is no "causal relationship between protected activity and

adverse action," Def. Mem. at 2, Lunney was obligated to "come forward with admissible

evidence supporting [his] claim" on this point.  Feurtado v. City of New York, 337 F. Supp. 2d

593, 599 (S.D.N.Y. 2004) (citing cases) (internal quotation marks omitted).[10]

Lunney details that after "attempting to inform another officer, who was confined to a

control room at least 45 feet away from plaintiff's cell," see Am. Compl. ¶ 15(e), that he lacked

certain hygiene items,

> [d]efendants Blot and Frazier approached plaintiff's cell and began to state that
> plaintiff had better "shut the fuck up or we are coming in there and you will not like
> the results."  After attempting to explain his problems to [them] Officer Frazier
> appeared to become calm and attempted to resolve plaintiff's complaints.
> However, defendant Blot stated "I don't give a shit about your fucking problems.
> File a fucking grievance."  Defendant Blot then proceeded to yell to the officer in
> the control booth to have plaintiff's cell opened.

---

[10] Because defendants' motion does not contend that verbal complaints cannot constitute constitutionally protected activity, it is unnecessary to reach this question.  The Court notes that some case law indicates that a prisoner's oral complaints to prison guards may provide the basis for a retaliation claim under § 1983.  See Smith v. Woods, 2006 WL 11312347, at *10 (N.D.N.Y. Apr. 24, 2006), aff'd, 2007 WL 756410, at *1 (2d Cir. Mar. 12, 2007); Gill v. Riddick, 2005 WL 755745, at *10 (N.D.N.Y. Mar. 31, 2005) (citing cases); Gaston v. Coughlin, 81 F. Supp. 2d 381, 386 (N.D.N.Y. 1999); Malik'El v. New York State Dept. of Corr. Servs., 1998 WL 187459, at *4 (N.D.N.Y. Apr. 8, 1998); but see Garrido v. Coughlin, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) ("verbal confrontation" not protected activity).

Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶¶ 15(e)(1)-(2)).  According to Lunney, Blot then entered Lunney's cell and assaulted him, id., though Blot denies that this assault ever took place. Blot Decl. ¶ 3.

Here, the sequence of events – a complaint followed by an immediate assault, accompanied by remarks referring to his complaint – would be sufficient for a jury to find that there was a causal connection between Lunney's complaints and the assault.  Accordingly, summary judgment cannot be granted to defendants on this claim.[11]

### 4. First Amendment Claim Against Frazier

Lunney alleges that Frazier assisted Blot "in assaulting plaintiff in retaliation for plaintiff making complaints." Am. Compl. ¶ 16(i).  Once again, defendants argue only generally that plaintiff's First Amendment retaliation claim should be dismissed for failure to establish a causal relationship.  Def. Mem. at 2.  As to Frazier's particular actions, Lunney claims that he "entered the cell and placed [Lunney] in a choke hold for several minutes."  Am. Compl. ¶ 15(e)(1). Frazier, like Blot, denies Lunney's allegations of unnecessary physical force.  Frazier Decl. ¶ 3. For the same reasons just stated, Lunney's allegations are sufficient to allege a causal connection between his complaints and the assault.  Thus, defendants must be denied summary judgment as to the claim against Frazier.

### 5. First Amendment Claim Against Brereton

Lunney's amended complaint states that he "filed a formal grievance complaint with the I.G.R.C. arguing that he had been fired [from his job as a porter] as a means of retaliation by

---

[11]Defendants make no arguments with respect to qualified immunity on this claim or with respect to the First Amendment claim against Frazier (discussed in the next section), and thus we do not consider the doctrine's applicability with respect to these claims.

defendant Brureton."  Am. Compl. ¶ 15(g)(2).  No further information is provided on this issue.

While Lunney makes reference to it in his memorandum of law, Pl. Mem. at 30, he does not

address it in his affidavit.  Given the conclusory reference in the amended complaint, there is no

admissible evidence before the Court that would allow a jury to conclude that Lunney had made

out each of the elements of a retaliation claim.

Accordingly, this claim must be dismissed.

E.   Unfiled Grievances

Lunney claims that defendant Kober violated his First and Eighth Amendment rights by

denying him "access to an effective Inmate Grievance Program," see Lunney Aff. ¶ 32, and thus

that Kober "deprived plaintiff of his means to petition the government for the redress of

grievances."  See Am. Compl. ¶ 16(e).  Specifically, he alleges that "[g]rievances were not

timely filed or they were completely ignored," and that Kober stated they "were never received

by his office."  See Lunney Aff. ¶ 32 (incorporating Am. Compl. ¶ 15(i)).  He adds that the Sing

Sing IGRC "was not operating in accordance with policy," that grievances "were not being

timely filed and responded to," that "investigations were biased and or incomplete," and that

"appeals were not timely filed."  See Am. Compl. ¶ 15(i).  While defendants argue that this claim

is unexhausted, see Def. Reply Mem. at 10, it is unnecessary to reach that issue because the

claim fails on the merits.

It is well established that a claim of violation of a state grievance procedure is not

cognizable in an action under 42 U.S.C. § 1983.  See Cancel, 2001 WL 303713, at *3 ("inmate

grievance procedures are not required by the Constitution and therefore a violation of such

procedures does not give rise to a claim under § 1983"); accord Davis v. Castleberry, 364 F.

Supp. 2d 319, 323 (W.D.N.Y. 2005); Fernandez, 2005 WL 733664, at *9; Mahotep v. DeLuca, 3

F. Supp. 2d 385, 390 n.3 (W.D.N.Y. 1998) (citing Buckley v. Barlow, 997 F.2d 494, 495 (8th

Cir. 1993)).

It does not help Lunney's claim if it is construed as one for denial of access to the courts.

To state a claim for denial of access to the courts under § 1983, Lunney must demonstrate that

defendants "took or [were] responsible for actions that hindered [plaintiff's] efforts to pursue a

legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks

omitted). Only those actions which rise to the level of "'deliberate and malicious interference'"

and which "'actually impeded his access to the court or prejudiced an existing action'" are

sufficient to present a claim. Green v. Phillips, 2006 WL 846272, at *11-12 (S.D.N.Y. Mar. 31,

2006) (quoting Cancel v. Goord, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)); accord

Rivera v. Pataki, 2005 WL 407710, at *17-18 (S.D.N.Y. Feb. 7, 2005). The evidence presented

by Lunney, however, does not satisfy this standard. The operation of the grievance process is

relevant to any access-to-the-courts claim only insofar as the procedure is a prerequisite for the

filing of a civil suit under the PLRA. Lunney has not shown how the operation of the grievance

procedure denied him such access. Moreover, in light of the fact that prisoners are excused from

filing grievances where prison officials prevent them from doing so or make the grievance

process not "available," see, e.g., Brownell, 446 F.3d at 311-12, any such actions – even if they

had been demonstrated – could not be shown to have deprived Lunney of his ability to bring any

lawsuit. Thus, this claim too must be dismissed.

F. Fourteenth Amendment Due Process Claims

As in his original complaint, Lunney asserts that his right to due process was violated by two separate actions.  First, Lunney claims that Selsky improperly ordered a second disciplinary hearing after the Article 78 proceeding had been filed with respect to the first hearing.  See Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10).  Second, he argues that defendants' failure to provide him with a timely written disposition of his disciplinary hearing was a violation of his due process rights.  See Am. Compl. ¶¶ 10, 12.  This first claim is identical to one the Court dismissed on the merits in its original ruling, see Lunney I, 2005 WL 121720, at *14, and thus the Court will not reconsider it here.  Accordingly, we address only the second claim.[12]

1. Law Governing Disciplinary Proceedings

A party asserting a due process claim "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Ortiz, 380 F.3d at 654 (quoting Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)).  Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  See Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003) (per curiam) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'"

---

[12] The defendants and Lunney discuss the matter of "hearing officer bias" in their summary judgment papers.  See Def. Mem. at 23-24; Pl. Mem. at 50-52; Def. Reply Mem. at 21-22.  However, Lunney did not raise this claim in his amended complaint or in his affidavit and thus we do not consider it.

Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)).

There is no bright-line rule in determining whether a particular period of confinement in a SHU meets the Sandin standard of an "atypical and significant" hardship thereby implicating due process protection.  See id. (citations omitted).  However, as in the original motion, defendants do not argue that Lunney's liberty interests were not implicated by his nine-month sentence of confinement to the SHU – which was later reduced to six months – under the standard established in Sandin.  It is assumed, therefore, that Lunney's sentence of confinement did implicate a liberty interest for purposes of this motion.  Consequently, we consider whether Lunney was denied due process when he was not provided with a written disposition of his disciplinary hearing and when the second hearing was scheduled.

### 2.  Written Disposition of Disciplinary Hearing

As noted above, see section I.A, Lunney's first disciplinary hearing, in June 2002, resulted in a finding of guilt for which he was sentenced to nine months in the SHU.  Lunney appealed this ruling, which was affirmed in August 2002.  Lunney then filed an Article 78 petition in the state Supreme Court, which led to an order to show cause directing Selsky to respond to the petition.  In October 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense.  The rehearing was held in October 2002, and Lunney was again found guilty and sentenced to nine months in the SHU.  He again appealed, arguing this time that he had not received a copy of the hearing disposition.  His appeal was denied, although his sentence was reduced to six months because the original sentence had exceeded the guidelines "without further justification."  See Memorandum, dated Nov. 7, 2002 (reproduced in Ex. J to Selsky

51

Decl., filed July 12, 2005 (Docket #84) ( "Selsky Decl.")).  Lunney filed a second Article 78 petition with respect to the rehearing, and in August 2003, a judge of the State Supreme Court dismissed the original misbehavior report and concluded that the failure to provide Lunney with a copy of the hearing disposition was a violation of due process.

With regard to the timing and manner of notifying Lunney about the hearing disposition, Lunney acknowledges that he received oral notification of the result on October 17, 2002.  See Def. 56.1 ¶ 12; Lunney Aff. ¶ 12.  It is undisputed that he also received a tape recording of the hearing on this date, and that the tape "contained all [of] the information contained in the written decision including the evidence relied upon and reasons for the penalty imposed."  See Def. Reply Mem. at 23.[13]

The written disposition stated that it was based on "the written report by Officer Hadzovic and because it was recovered in the locker which was lock [sic].  Also from the testimony of Sgt. Guadagno who stated that the showers are normally completed by 7:15-7:30 PM."  See Superintendent Hearing Disposition Rendered, dated Oct. 17, 2002 (reproduced in Ex. H to Selsky Decl.).  It noted the reasons for the disposition as: "to impress upon this person the seriousness of this act and to act a[s] a deterrent to other[s].  Also that the possession of illegal weapons in a correctional facility is very detrimental to the safety and security of all those that work and live [h]ere, and this will not be tolerated."  See id.  Lunney makes no allegations regarding what was or was not on the tape.  Nor does he allege that the written decision contained any information that was not on the tape.

---

[13]Lunney wrote a letter to Donald Selsky, see Letter, dated Nov. 14, 2002 (reproduced in Ex. K to Selsky Decl.), stating that the original tape he received was defective, and requesting a new one.  Defendants state, and Lunney does not dispute, that he received a new tape around that time.  See Def. Mem. at 24.

In its original ruling on this claim, this Court allowed Lunney's claim regarding his failure to receive a written disposition of his disciplinary hearing to proceed because "the right to receive a 'written statement of the disposition' [is] a requirement that has been in place since the Supreme Court's decision in Wolff v. McDonnell [418 U.S. 539, 563 (1974)]."  See Lunney I, 2005 WL 121720, at *13 (citing Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004)); see also Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999); McCann v. Coughlin, 698 F.2d 112, 121-22 (2d Cir. 1983); Higgins v. Coombe, 2002 WL 362776, at *2 (S.D.N.Y. Mar. 6, 2002); Silva v. Sanford, 1998 WL 205326, at *6 (S.D.N.Y. Apr. 24, 1998).  The Court noted at that time that the defendants might be able to defeat the due process claim based upon additional facts (not contained in the complaint) showing, for example, that Lunney was informed of the disposition or was otherwise given the opportunity to obtain it.  Lunney I, 2005 WL 121720, at *13.  In addition, the Court left open the possibility that the defendants could show entitlement to qualified immunity.  Id.

Prison disciplinary hearings are subject to a harmless error analysis.  See Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.") (internal citations omitted); Louis v. Ricks, 2002 WL 31051633, at *11 (S.D.N.Y. Sept. 13, 2002) (citing Powell, 953 F.2d at 750).  Defendants now argue that any failure to provide Lunney with a written disposition of the result of his disciplinary hearing in a timely fashion was harmless, because: (1) "there was no information contained in the written hearing decision not provided to plaintiff before his final challenge to the hearing decision and penalty,"

53

see Def. Reply Mem. at 23; (2) after receiving a tape recording of the hearing which contained the rationale, "he did not add any new substantive arguments related to the rationale . . . because he had already made the best arguments possible," see Def. Mem. at 26; and (3) his sentence was reduced for exceeding the guidelines, despite his failure to raise the issue on appeal.  See Def. Reply Mem. at 23.  Thus, defendants argue, the claim must fail.  See Def. 56.1 ¶¶ 12, 35; Def. Mem. at 22-23; Def. Reply Mem. at 25-27.

Lunney does not contradict any of the relevant facts asserted by defendants on this point. Rather, he states that although his punishment at the second disciplinary hearing was in the end reduced for exceeding the guidelines, he never made this challenge on appeal.  See Pl. Mem. at 57.  He uses this fact to argue that "[p]erhaps if plaintiff had received a copy of the disposition paperwork, he could have argued on appeal that the penalty . . . exceeded the guidelines."  See id.  This is the only harm Lunney points to based on his not having received the written disposition.

Lunney's argument fails for two reasons.  First, he was aware of his nine-month sentence following the disciplinary hearing.  See Def. 56.1 ¶ 12 (citing Lunney Dep. at 93, 100-101). Thus, nothing prevented Lunney from raising the alleged illegality of the nine-month sentence even without a copy of the actual written disposition.  Second, Lunney has not shown that there was any potential for any other outcome had he been provided with a copy of the written disposition.  For example, he makes no argument that he could have received an even greater sentence reduction had he had access to the written hearing disposition.  Given that the error in the sentence was remedied in November 2002 prior to his serving six months in confinement, any failure on his part to raise the argument that his sentence was incorrect was necessarily harmless.

<u>Conclusion</u>

For the foregoing reasons, defendants' motion should be granted, with the exception of the portion of their motion concerning Lunney's claim of (1) excessive force against Blot and Frazier and (2) his First Amendment retaliation claims (a) against defendant Blot based on the allegedly retaliatory assault, threats, and deprivation of recreation and showers (b) against defendant Frazier for his participation in the retaliatory assault.[14]

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (e).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, 500 Pearl Street, New York, New York 10007, and to the undersigned at the same address.  Any request for an extension of time to file objections must be directed to Judge Kaplan.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 144-45 (1985).

---

[14] Lunney asserts in his amended complaint that Fischer subjected him to "forced labor without pay" while he was in the SHU, <u>see</u> Am. Compl. ¶16(c).  However, this claim is not explained in his affidavit.  Nor is any evidence supplied to support it.  Accordingly, it is too vague to constitute the basis for a claim and it has not been discussed herein.

55

Dated: May 29, 2007

     New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge


Copies sent to:

George Lunney
94-A-3321
Elmira Correctional Facility
PO Box 500
Elmira, NY14902-0500

Benjamin Lee
Assistant Attorney General
120 Broadway
New York, NY 10271

Hon. Lewis A. Kaplan
United States District Judge